OPINION
{¶ 1} In this accelerated calendar appeal submitted on the briefs of the parties, appellant, Jeffrey R. Phillips, challenges the final judgment of the Mentor Municipal Court finding him guilty of driving under the influence of alcohol following a bench trial. For the reasons that follow, the judgment of the trial court is affirmed.
{¶ 2} The following procedural history is relevant to this appeal. On March 3, 2001, appellant was cited for operating a vehicle while under the influence of alcohol and/or drugs, in violation of R.C.4511.19(A)(1); failure to wear a safety belt, in violation of R.C.4513.263; and improperly leaving marked lanes, in violation of Mentor Ordinance Section 73.09.
{¶ 3} This matter proceeded to a bench trial. On May 7, 2001, the trial court found appellant guilty of operating a vehicle under the influence of alcohol and/or drugs, while the remaining charges were dismissed. The verdict and subsequent sentence is reflected in a judgment entry dated June 6, 2001. Appellant's sentence, however, was stayed pending the outcome of this appeal.
{¶ 4} It is from this judgment entry appellant appeals advancing two assignments of error for our consideration:
 {¶ 5} "[1.] It is the defendant-appellant, Jeffery R. Phillip's, contention that the traffic stop was pretextual in that the area in which the defendant-appellant supposedly violated the Mentor Ordinance dealing with marked lanes was not, in fact, marked.
 {¶ 6} "[2.] The trial court, by finding the defendant-appellant not guilty of the marked lanes was further [sic] indication that the stop was pretextual."
{¶ 7} As a preliminary matter, we note that on appeal, appellant argues that the initial stop of his vehicle was unconstitutional. Although not raised as an issue on appeal, we take notice of the fact that appellant failed to file a pretrial motion to suppress the evidence flowing from the police stop.
{¶ 8} Despite appellant's failure to file such a motion, we believe that at the bench trial, appellant could still have challenged the credibility of Officer John Vecchione's ("Officer Vecchione") testimony that he observed appellant drive onto a marked bike lane. However, the weight of the evidence and the credibility of the witnesses' testimony is primarily the province of the trier of fact, which in this case was the trial court. State v. Fanning (1982), 1 Ohio St.3d 19, 20;State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
{¶ 9} Having resolved our procedural concerns, we consider the instant appeal. Under the first and second assignments of error, appellant suggests that the stop was pretextual. Specifically, appellant contends that Officer Vecchione did not have a constitutional basis to initiate a stop when appellant purportedly drove his vehicle onto the bike lane because there was no marked bike lane on the roadway. To support his position, appellant points to the trial exhibit pictures illustrating that there was no marked bike lane on the road. Appellant further maintains that Officer Vecchione's stop was pretextual as he did not witness a traffic infraction and/or improper/drunken driving.
{¶ 10} Briefly, the following facts were adduced at trial. On March 3, 2001, Officer Vecchione of the Mentor Police Department observed appellant traveling northbound on Hopkins Road by the cemetery when he noticed appellant drift to the right side of the road into the marked bike lane on three separate occasions. The officer indicated that appellant's vehicle drifted approximately one foot into the bike lane for a couple of seconds. Then, according to Officer Vecchione, when appellant crossed Jackson Street while traveling northbound on Hopkins Road, "he had gone completely far right into the bike lane." The officer described appellant's driving as weaving. As a result of his observations, at approximately 2:16 a.m., Officer Vecchione initiated a stop of appellant's vehicle.
{¶ 11} After approaching the vehicle, the officer spoke with appellant. During this inquiry, Officer Vecchione noticed a strong odor of alcohol on appellant's person, that his eyes were bloodshot and glassy, and his speech was slurred. The officer asked appellant if he had been drinking, and appellant responded no. Officer Vecchione then requested appellant to exit his vehicle to perform several field sobriety tests, including the horizontal gaze nystagmus ("HGN") test, the walk and turn test, and the one-legged stand test. Appellant performed poorly on the field sobriety tests and was subsequently arrested.
{¶ 12} Appellant, however, testified to a different set of facts. According to him, while he was traveling northbound on Hopkins Road, he was on his cellular phone. Appellant then noticed a police cruiser following him with the "bright-lights" activated, which blinded his vision a bit. After Officer Vecchione effected a stop of appellant's vehicle, appellant claimed that "[the officer] accused [him] of having priors, called [him] an asshole, and asked [him] to step out of the car." According to appellant, he did not know why he was stopped. Appellant testified that he believed he did fine on the field sobriety tests, and that he was not under the influence of alcohol. Appellant further claimed that there were no markings for a bike path, and that he was not traveling outside of his lane.
{¶ 13} At the close of the evidence, the trial court indicated that it believed Officer Vecchione's version of events and found appellant guilty of driving under the influence of alcohol. Contrary to appellant's assertion, the trial court did not find appellant not guilty of the marked lanes violation; rather, the trial court dismissed this charge, along with the failure to wear a safety belt charge.
{¶ 14} Even if we assume, arguendo, that there was no marked bike lane on the roadway, the fact remains that appellant was not driving straight down the roadway.[1] Rather, according to Officer Vecchione, he observed appellant repeatedly weave within his lane in a short distance.
{¶ 15} Pursuant to Terry v. Ohio (1968), 392 U.S. 1, a police officer must have reasonable suspicion to justify a stop. On numerous occasions, this court has held that "there must be some indicia of erratic driving to warrant an investigative stop beyond some incident of modest or minimal weaving in one's lane alone." State v. Spikes (June 9, 1995), 11th Dist. No. 94-L-187, 1995 WL 407357, at 4. "Under the appropriate scenario, excessive weaving in a short distance may be tantamount to erratic driving and, thus, sufficient to permit the officer to further investigate the conditions underlying the driver's actions." Id. Thus, "police officers may lawfully stop a motor vehicle solely on the basis that the vehicle is weaving, but only when the extent of the weaving [is] what can be described as substantial." (Emphasis added.)Willoughby v. Mazura (Sept. 30, 1999), 11th Dist. No. 98-L-012, 1999 WL 960573, at 3.
{¶ 16} Moreover, in State v. Miller (Sept. 22, 2000), 11th Dist. No. 99-A-0052, 2000 Ohio App. LEXIS 4330, this court explored a similar issue of whether a police officer may effectuate a stop after observing a vehicle swerve from side to side on an unmarked gravel road. We answered this query in the positive for the following reasons:
 {¶ 17} "[Trooper Clayman] noticed that the [defendant's] truck was weaving. At that time, Trooper Clayman got into his patrol car, caught up to appellant's vehicle, and followed him for approximately a quarter of a mile. He testified that [defendant's vehicle] was `weaving all over the roadway * * * from the northbound lane to the southbound lane and back and forth' and driving very slowly, twenty miles per hour.
{¶ 18} "* * *
 {¶ 19} `'Trooper Clayman observed [the defendant's vehicle] weaving continuously for approximately a quarter of a mile * * *. This court has held that police officers may lawfully stop a motor vehicle solely on the basis that the vehicle is weaving, but only when the extent of the weaving was substantial. State v. Farley (Feb. 11, 1994), Lake App. No. 93-L-078, unreported. The weaving described by Trooper Clayman qualifies as substantial. The trial court did not err in overruling appellant's motion to suppress." Miller at 2 and 6.
{¶ 20} With the foregoing principles in mind, we consider the case sub judice. Here, appellant's vehicle was being operated within the speed limit for the area. Despite that fact, on three separate occasions, while appellant was travelling on Hopkins Road and within a short distance, his vehicle drifted to the right side of the road. On the fourth occasion, Officer Vecchione testified that when appellant crossed Jackson Street while traveling northbound on Hopkins Road, his vehicle had gone "completely far right. * * *" Office Vecchione was four or five car lengths behind appellant, and he followed appellant for approximately a quarter of a mile. Further, the officer admitted that he initiated a stop due to the manner in which appellant was driving his vehicle.
{¶ 21} Even if we accept appellant's contention that there was no marked bike lane, the logical inference from this is only that appellant was driving in an extra wide lane. The fact remains that appellant's weaving occurred within a short distance, was substantial, and tantamount to erratic driving. Given the totality of the circumstances, Officer Vecchione had reasonable suspicion to initiate a stop of appellant's vehicle. See, e.g., Miller, supra. Thus, contrary to appellant's assertion, neither the stop nor the arrest were pretextual. Furthermore, appellant's explanation as to why he may have been weaving does not defeat the reasonable suspicion to effectuate a stop.
{¶ 22} Based on the foregoing analysis, appellant's first and second assignments of error are meritless, and the judgment of the trial court is affirmed.
WILLIAM M. O'NEILL, P.J., ROBERT A. NADER, J., concur.
[1] The photographs produced at trial showed that sections of the road and bike lane were being repaved. The pictures needed testimony in explanation, as they were not conclusive in and of themselves.